and move this morning to our second case, Christopher Pable v. CTA. Mr. Duffy? Good morning, and may it please the Court. I'm Timothy Duffy, here on behalf of appellant Christopher Pable, who is with us in the courtroom, and on behalf of myself. The district court dismissed Mr. Pable's claim against the CTA and Clever Devices based on its conclusion that he intentionally destroyed signal messages on his phone on November 2, 2018. That finding, the district court rested that finding on the conclusion that Mr. Pable's testimony about the deletion of those messages was not credible. And that conclusion, that Mr. Pable was not telling the truth, is based on a very thin portion of the voluminous record in this case. In fact, it's only about five pages of printed text, and that is the form in which both the magistrate judge and the district court reviewed the matter. The first piece was Mr. Pable's deposition testimony, where he was first asked about the deletion of the messages. And he said, well, it happened because we were both using signal, and I'm not sure if Mr. Haynes was prompted to cross-delete. I don't remember what signal was configured like at that time. And the court can look at this at 129-7 in the record, page 381. It's literally not even two pages of deposition testimony. The second piece of evidence underlying the district court's decision was an affidavit from Aruna Harder of Signal that says the feature that allows a user to specifically delete a message from a thread, from a conversation thread that that person has sent, did not come into place until later in time. And that Signal has never had a feature that allows the recipient of a message to delete a message in a thread and delete it from the other phone. The third piece of evidence, and that, as you know from our briefs, is at 129-17, the Harder affidavit. It's only a couple pages. And that was first submitted to the magistrate judge in support of the CTA's exfoliation motion. Mr. Popley's first chance to respond to the Harder affidavit and what it meant, and what it meant for the case, was in response to the exfoliation motion. Not at a hearing. The problem was, though, that the court resolved this based upon your client's own statements. And he took inherently inconsistent positions in what he initially said, that, oh, this was because of Mr. Haynes' phone configuration. And when Mr. Haynes deleted the Signal conversations, they deleted on my phone, too. And then Quest came back and said, no, no, no, that's not something that could have happened. And then he came back with a different story about the custom configuration on his own phone, which came only after the Quest affidavit, and was inconsistent with what he had previously said, that this was Mr. Haynes' fault, not what he did. So that's what the court made the decision based on. And how is that clearly erroneous is ultimately what's before us. Yeah. If I could, Your Honor, I don't think the court was thinking, and if it was, it was wrong, because the evidence doesn't support it. It wasn't that it was a, I mean, Mr. Haynes might have had something on his phone, but he clearly didn't. We know that. But your client said that. Your client initially said, my texts or my communications on Signal were deleted when Mr. Haynes deleted his. It was Mr. Haynes' phone that that configuration, when he deleted his texts, that ultimately resulted in mine being deleted as well. It wasn't necessarily Mr. Haynes' phone. It was Mr. Haynes' action that triggered the Quest deletion. That is what he claims, and that is what he's claimed both in his initial testimony and his subsequent affidavit, that that action taken by Mr. Haynes had the effect of deleting it on his phone as well. Now, in the deposition testimony, he said, well, you know, he didn't know whether that was a further choice by Mr. Haynes or whether, or what the mechanism was. Harder says, well, it wasn't using this newer feature that allows you to delete specific messages. Harder did not speak, however, to what Mr. Haynes did. What Mr. Haynes said he did and what Mr. Pavley said he did was delete the whole conversation. And Harder's affidavit simply doesn't speak to that effect. It speaks to the cross-deletion of specific messages. His affidavit offers, for the first time, because- How was the district court's decision here clearly erroneous? Yes. How? Because if you look at these, if you read his testimony, his first testimony, and you read the affidavit, the Harder affidavit, and then you read his affidavit, there is no inconsistency. They are talking about two different things. The Harder affidavit only speaks to this specific, you know, as we now know now, all of us, sometimes you could delete a specific message. That feature was not available, and there's no dispute about that. But Mr. Pavley did not say that feature was used first. He said Mr. Haynes deleted the whole conversation, and that somehow took them off my phone as well. The Harder affidavit did not answer that question. It said it wasn't possible. It said it wasn't possible. Your client testified that the messages were deleted from his phone because of how Haynes' phone was configured, and the other affidavit said that that just wasn't possible, and then your client gave a different explanation after reading the Quest affidavit. He said it was not how Haynes' phone was configured. It was how his signal was configured. He says, is it your understanding that Mr. Haynes elected to delete for both you and him on your phone? Answer, it's possible he did that, but I can't stipulate as to how the signal application was written in 2018. We would have to get the exact version of signal that his phone was running and see what the behavior was. It's undergone changes since then. And then the question, what I'm asking is Mr. There was no mention in his original testimony about his own custom configuration of the phone causing the deletion of the messages, and that's what the magistrate judge and ultimately the district court found inherently inconsistent because he initially said it was Haynes' configuration on his phone, and then after Quest said that wasn't possible, he came back with this custom configuration on his own phone. And I have not heard any explanation as to why that isn't inherently inconsistent. Well, even if it is that it was Haynes' phone and then his phone, he's asked for the first time what happened to these messages. He admits he doesn't remember or hasn't looked into what signal was capable of at the time. CTA came back with a very specific affidavit about individual message cross deletion, and in response to that he offers the explanation of, well, the signal affidavit didn't talk about what happens when you delete a conversation. Frankly, now that I can go back and look and explain to you, there's this other feature that could explain it. Now, whether someone thinks that proves he was right or maybe it's a credible story or maybe it's possible, that's something that should have been explored in a hearing or put for the jury where you'd have been able to ask. What basis do you have to argue that a discovery dispute should be decided by a jury? Jury trials are grounded in either in civil cases in the Seventh Amendment or statute, and you haven't identified here either of those, and I don't think you would ever find a case anywhere that says that an individual has a right to have a jury make a discovery determination. Well, Rule 37 and the advisory committee notes talk to this. They don't talk about a jury trial. They talk about that the judge can decide it based on a pretrial motion or a hearing or during a bench trial, that the judge can decide it. Rule 37 says nothing about giving a jury trial right for it. It's not that Mr. Pavley was entitled to a jury trial right. I mean, to a jury trial on the issue of, you know, whether he deleted his messages. It's that when the district court is going, reaches the… So are you withdrawing that argument? Because I understood you to be arguing he was entitled to a jury trial on the question of intent for the discovery violation. He was entitled to have an issue of his credibility that results in the dismissal of his case, that when the dismissal of his case turns on something that either did or didn't, that he did or did not do, and the district court resolves that dispute based on an assessment of his credibility, based on a snippet of deposition testimony and an affidavit, that's a matter that has to be resolved, we think, by a jury. At a minimum, it deserves a hearing. And it's an abuse of discretion not to hold that hearing under CAPCO and other precedents from this court. Let me, I know you're into your rebuttal time, but let me understand your… This happens in August. He's placed on administrative leave in October. Do we have anything in the record about when he retained counsel? We know he reached out to a lawyer in November. But do we have anything in the record about when he retained counsel? And is, are you, is it your theory that he understood as of October, August through October, that he was to preserve all evidence? Are you conceding that, or do you have any issue with that? I can't tell from your briefs and your argument below. We didn't raise that issue on appeal because the district court found that it was an anticipation litigation. Mr. Pavley did, he was concerned at the time that he was going to have a claim against the CTA. He thought it had something to do with his medical leave and whatnot. Yes, understood. And he had inquired with a few lawyers. He had not retained anyone at that time. He didn't retain anyone until he retained me several months later to, or at least several weeks later, to bring this claim. So he did not have a lawyer at that time. At that time, meaning October. Correct, correct. And as of the November 2nd meeting with Haynes. Correct, no lawyer. But you are not arguing anywhere that he would not have understood the need to preserve evidence. I understand. No, we did not raise that on appeal because that is something that the district court found. And it's very hard to, to argue that was clearly erroneous because it was possible there was litigation. I do think it's something the court should have taken into account in assessing the severity of the sanction. This is not something that happened during the case or after it was obviously very clear to him. Did you raise that with the district court? Yes, in our filings on the spoliation motion and the objections, we did make those arguments. And certainly the issue of taking a broader view of the effect of any alleged spoliation and the actual practical realities of what his decision was when it comes time to say, I'm going to impose the most severe sanction possible on you by dismissing your case and making you pay a bunch of money. It is something the court should have weighed in light of his claim, in light of the defenses, in light of the practical considerations. I do just want to spend a minute, before I reserve another minute, on the Rule 37A-5. There's just no basis for assessing monetary reward based on fees and costs under Rule 37A-5. Some district courts have done it, but this court's never endorsed it. And this notion that it's okay because the rule says you can cure prejudice just doesn't hold up. First of all, you couldn't have a clear example in the text specifically allow costs four times and then don't the fifth time. And prejudice, I submit, in the context of the rules, means prejudice in the case. We're going to limit the evidence. We're going to enforce a deadline. We're going to give an adverse instruction. We're going to limit this tortured reading of prejudice into, oh, let me make you financially whole as well, when that's not something that's sanctioned in the rule, I think is an important thing. I'll reserve my last minute for a moment.  Thank you. Ms. Babbitt. Good morning, Your Honor. Elizabeth Babbitt on behalf of the Chicago Transit Authority. I'm also arguing on behalf of our co-appellee, Clever Devices and Counsel for Clever. Michael Hughes is also present today. I want to turn first to the issue that Mr. Duffy was discussing with respect to the inconsistent statements that were made and Judge Senev's point as to no showing of clearly erroneous. And to be very clear, Mr. Duffy characterizes it as a very thin record that the court hangs its hat on below. That's not the case here. The testimony that Mr. Pavley gave in his deposition was explicit and clear. There was multiple questions asked, why aren't these messages on your phone? He testified at length as to how those messages came to not be on his phone, and he pointed directly to Mr. Haynes. He said, I watched him do it. Mr. Haynes deleted it from my phone. I knew I had those messages on my phone. And then he selected the entire thread and deleted those messages. And Mr. Pavley goes on at length in his deposition even saying, I felt like a third of my life was deleted because he was so upset and felt emotional that Mr. Haynes had taken that action against him to delete the messages that they exchanged between each other. And then there was the intervening affidavit from the Signal chief operations officer, which confirmed, of course, that that action that Mr. Pavley claimed had taken place was not technologically possible. That Signal did not have the technology wherein a user like Mr. Haynes could elect to delete all of his messages off of his phone, and it would force all the messages to be deleted off of Pavley's phone retroactively. That wasn't something that existed at the time. We produced that affidavit to Mr. Pavley in the course of discovery in, I believe, October of 2021, eight months before Mr. Pavley offered his new version of events. Mr. Pavley, when he was confronted, and he says he is confronted with the statements that Ms. Harder makes in her affidavit explaining that what he had testified under oath wasn't technologically possible. He then submits a new affidavit, and in that affidavit he gives a lengthy explanation that's very technological, but the point of it is he must have had some settings on his phone that he arranged, which he must have had knowledge of since he was the one who elected to set them up on his phone, such that when Mr. Haynes deleted the messages from Haynes' phone, it caused them to be deleted from Mr. Pavley's phone as well. The magistrate judge and the district court judge, in viewing all of that, confirmed, without even really regard for what the Harder affidavit said, that Mr. Pavley's testimony was simply not credible. Magistrate Judge McShane refers to Mr. Pavley covering his tracks with his second version of events because— Was that second affidavit submitted in connection with the discovery motion? The second affidavit was— I guess the first affidavit from him after his testimony and after signal chief officer's affidavit was submitted. Yes. So the affidavit was produced at discovery, so Pavley had access to it, sits on it, the CTA files its motion for sanctions to seek dismissal of the case— And it's then that he submitted his affidavit. And, you know, Mr. Duffy argues and continues to maintain that he was entitled to a hearing. The CAPCO case instructs that no hearing is necessary in these circumstances. It's reviewed for an abuse of discretion. And what CAPCO provides is that the party, Mr. Pavley in this instance, must have notice of the issues that are presented and have an opportunity to respond. And Mr. Pavley had more than sufficient of both of those. He had plenty of notice. He had the ability to respond with an uncontested affidavit. The CTA actually moved to strike his affidavit because the CTA didn't have an opportunity to probe that new theory. The judge allowed it to be in the record and took it on its face that that was what Mr. Pavley's new position was. And so there was no need for the court to have a hearing to evaluate the credibility. Let me make sure I understand this because you do refer to Pavley's deletion of communications. Do we know that it was Pavley himself who deleted the communications? And what's the best evidence in the record for that inference? So the court concluded that the only reasonable conclusion based on the incredible and evasive tactics that Pavley engaged in during the course of the case, the only conclusion would be that Pavley deleted those messages. There is no affirmative proof that Mr. Pavley, in fact, is the one who pressed the button. Now, I would submit that even if you take Mr. Pavley's second affidavit on its face, where he says that he arranged his phone to have these safety numbers, this technology in which it would force the messages, he still took that affirmative action to delete those messages by virtue of having that setting on his phone. It's really a question we can look at both ways. But it seems like Pavley's underlying claim could have had merit. Maybe, maybe not. It wasn't a frivolous lawsuit he was filing against CTA. So why is it reasonable for the district court to infer foul play, bad faith on his part, when he had, at least on its face, a sound lawsuit? And all of this happened during a time when the lawsuit had not even been initiated. The lawsuit doesn't actually start until about a year, a little over a year after all of these events in this kind of October-November time frame. So, Your Honor, respectfully, I would sort of divorce the merits of his claim in his case and the court's ultimate determination as to the sanction of dismissal. But with respect to the timing of the deletion of those messages, the court concluded that Pavley had an obligation to preserve, that his obligation to preserve the evidence was triggered as of October 29th of 2018. And that's when, it's undisputed, Pavley was communicating with attorneys. He was communicating with Mr. Haynes, his supervisor, about how he intended to sue the CTA and was evaluating those claims. And Mr. Pavley, even in his deposition testimony, he testifies the record is 129-7 at 536. He testified himself that he knew at that point, or relative at that point, that he had an obligation to preserve evidence. So he himself concedes that. But the fact that ultimately the court determined that dismissal was appropriate, even if he did have a meritorious claim, was because the CTA could never have a fair defense. The relevance and the significance of the messages that were deleted, it wasn't simply just messages with a third-party witness that may have had something to do with the litigation. Mr. Pavley was bringing a whistleblower claim against the CTA and against Clever, and he intentionally deleted, by the finding of the court, the messages that he exchanged in real time with the person he claimed to blow the whistle to. So all of those messages, all of the communications they may have had about whether or not, you know, some of the messages that were preserved by Mr. Haynes suggested, just throw me under the bus. Pavley messages Haynes, sorry, I'm going to have to make you be the bad guy. All of the information that we still were able to get from Mr. Haynes, not from Mr. Pavley, would suggest that perhaps he wasn't a whistleblower. And we'll never have, the CTA will never have the full access to those messages because Mr. Pavley took actions to purposely make sure that the CTA did not have access to that information. So turning to the, Ms. Babbitt, can I clarify, if you can, there was a roughly $53,000 amount that was awarded. Is it, did that include the fees and costs associated with the motion to enforce the subpoena, or did that only involve the discovery costs leading up to the motion? I believe that that amount also included both the paper, the pleadings, and the fees associated and costs. I don't know if there was actual costs associated with that paper, Your Honor, but yes. By paper, you mean the filing of the motion? Yes, and preparation of it. And I'd like to turn to the Rule 37A5 issue, which is the issue of whether or not Mr. Pavley appropriately opposed the motion to compel such that sanctions are not appropriate. And so Rule 37A5 provides that when a party opposes a motion to compel, that the party that files the motion to compel or discovery motion of that sort under Rule 37A should be made whole, that the party should be entitled to receive its fees if the opposing party did not have a reasonable basis to oppose it. And I think it is sort of in the extreme for Mr. Pavley and Mr. Duffy to maintain that the opposition to the motion to compel was a well-taken opposition. The CTA engaged for months in trying to get discovery. We received a phone in discovery that was effectively blank. It had less user-generated data than if you had bought a phone from the Apple store. When we finally got the phone that Mr. Duffy had maintained was a complete image of the phone, a representation he made both to the CTA and then ultimately to Magistrate Judge McShane in a hearing. And Mr. Duffy continued to maintain that position throughout the litigation until ultimately the CTA had a second image done, which confirmed that, in fact, Mr. Duffy had never had an image taken of the phone, that Mr. Duffy had never directed his third-party vendor, Quest, to even prepare an image of the phone. And so for those reasons, the CTA should be entitled to the fees and costs associated with its Rule 37A5, its motion to compel. On that same track, the Section 1927 sanctions should also be affirmed against Mr. Duffy. Mr. Duffy clearly engaged in vexatious conduct and unreasonable conduct in his pursuit or, I'm sorry, in his taking position throughout the litigation with respect to the phone. He knew all along that the CTA sought a complete image of the phone. He knew what an image of a phone meant as a practicing attorney, a sophisticated attorney, and he made representations throughout, first claiming that the CTA must have wiped the phone and that might be why there isn't sufficient data on the phone. And then ultimately when it's confirmed that, of course, he didn't have the phone imaged and that the data had never been properly preserved, he pivots to, well, it's not that big of a deal. The information on the phone would not be that relevant, and how could we ever point to anything? And it leaves the CTA and Clever in a position where we will never know what was on the phone. It wasn't preserved. It wasn't preserved on October 29th of 2018, and it wasn't preserved even in June of 2020 when Mr. Duffy first informed the CTA in Discovery Communications that he had just imaged the phone. He never imaged the phone, and he continued to play a game of wordplay, acting as if we all weren't sure what we meant by an image of the phone throughout this case. And that was why the court ultimately determined that this was the sort of vexatious and unreasonable conduct that warranted Section 1927 sanctions. For all of these reasons, I would ask that the court affirm the entry of judgment and the dismissal of prejudice of the case and affirm the award of sanctions against Mr. Pavley and Section 1927 sanctions against Mr. Duffy.  Mr. Duffy. I urge the court to look at what Ms. Babbitt characterized as extensive testimony. It's three answers in a page. Yes, he went on to say he was actually emotionally hurt by Mr. Haynes' deletion. I think that enhances the possibility that he's telling the truth as to what occurred on that day. But let me address this issue of the— Well, before you move on, the magistrate judge then says, he says in that, I was hurt. I felt like a third of my life had been deleted. But he also had testified that he had at that time a 50-message cap, and she couldn't reconcile the two, a third of his life and a 50-message cap. Can you just speak to that if you want us to look at that testimony? I think he was referring to his connection to Mr. Haynes was such an important part of his life, not the particular messages that they happened to exchange over the last 50, I think it would have been at that time, were that significant to his life. I would note to the court, too, you can look at this one, 2918. These are messages from Mr. Haynes' phone that pick up the moment after he deleted, that Mr. Haynes deleted, there's no question Mr. Haynes deleted messages, and then they pick up and we've got pages and pages and pages over the following days, some of which Ms. Babbitt talked about. And these folks are not hiding messages. They're making very candid statements about the case and their circumstance. So the notion that the messages that preceded this were somehow fundamentally different, all of which were written nowhere near the time of the events at issue is pretty thin. And if I might have just another minute to talk about the timing of the harder affidavit. Your time has expired. Thank you. Thank you.